FILED

2016 Dec-15 PM 03:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| DRUSILLA FIFE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:15-cv-1518-TMP |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.  Introduction

The plaintiff, Drusilla Fife, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI").   Ms. Fife timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).   The parties have consented to the jurisdiction of the undersigned magistrate judge.    Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

Ms. Fife was 49 years old at the time of the Administrative Law Judge's ("ALJ") decision, and she has a high school education.   (Tr. at 29).   Ms. Fife claims that she became disabled on May 1, 2011, when she was involved in a car accident. She asserts that she can no longer work due to pain in her hips and legs that arose after surgeries to repair a broken tailbone and shattered pelvis.1   (Tr. at 160).   She also asserts that she has depression.   (Tr. at 45-46).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.   *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).   The first step requires a determination of whether the claimant is "doing substantial gainful activity."   20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).   If she is, the claimant is not disabled and the evaluation stops.   *Id*.   If she is not, the Commissioner next considers the effect of all of the claimant's physical and mental impairments combined.   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.   *Id*.   The decision depends upon the medical evidence in the record.   *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).   If the claimant's impairments are not severe, the analysis stops.   20 C.F.R.

---

1 She further claimed to have a rod in her pelvis and a dislocated left leg.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).    Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).   If the claimant's impairments fall within this category, she will be found disabled without further consideration.   *Id.* If her impairments do not, a determination of the claimant's residual functional capacity ("RFC") will be made, and the analysis proceeds to the fourth step.   20 C.F.R. §§ 404.1520(e), 416.920(e).   Residual functional capacity is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments.   20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops.   *Id.*   If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.*   Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if she can do other work.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   If the claimant can do other work, the claimant is not disabled.    *Id.*   The burden of demonstrating

3

that other jobs exist which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove her inability to perform those jobs in order to be found to be disabled.   *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms. Fife has not been under a disability within the meaning of the Social Security Act from the date of onset through the date of her decision.   (Tr. at 30).     She first determined that Ms. Fife has not engaged in substantial gainful activity since the alleged onset of her alleged disability on May 1, 2011.   (Tr. at 18).   According to the ALJ, based on the requirements set forth in 20 C.F.R. §§ 404.1520(c) and 416.920(c), plaintiff's severe impairments include her status post right sacral fracture and right posterior wall acetabular fracture; status post open reduction internal fixation (ORIF) left posterior wall acetabular fracture; status post complex pelvic ring injury including right sacroiliac diastasis with fracture and complex anterior injury including multiple pubic rami fractures and diastasis; treatment with internal fixation and removal of internal fixation; left foot drop; anxiety; and major depression.   (Tr. at 18-19).   However, she found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 19-21).   The ALJ further found that Ms. Fife's physical injuries did not meet

4

the criteria of Sections 1.04 or 1.02 (disorders of the spine or major dysfunction of a joint), and that she had no symptoms severe enough to meet any listing for mental disorders in Section 12.04 or 12.06.   (Tr. at 20).

The ALJ further determined that Ms. Fife has the following residual functional capacity: a range of sedentary work, standing and/or walking two hours in an eight-hour work day; sitting the remainder of the day; can lift or carry 10 pounds occasionally and less than 10 pounds frequently; can never push/pull with the left lower extremity; can occasionally push/pull with the right lower extremity and bilateral upper extremities; can occasionally climb ramps or stairs, but never climbing ropes, ladders, or scaffolds; can occasionally balance on uneven terrain; can occasionally stoop, kneel, crouch, and crawl; can occasionally work around extreme cold, wetness, humidity, and extreme heat; can never work around hazardous machinery or at unprotected heights; can occasionally reach overhead with the bilateral upper extremities; can understand, remember, and carry out simple instructions; can maintain attention and concentration for two-hour time periods in order to complete an eight-hour workday; and can adapt to changes in the workplace that are introduced gradually and infrequently.   (Tr. at 21).   The ALJ further found that the claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible in that they were not supported by

5

the medical treatment records and the claimant's own reports of her activities.   (Tr. at 25-26).

The ALJ reviewed the claimant's reports regarding her pain and her abilities, noting that Ms. Fife testified at the hearing that her pain level was an 8 or 9 on a scale of 1-10, that she usually has pain at more than an 8 to 9 level, that she does very limited amounts of cleaning or cooking at home, and cannot sit or stand for more than a few minutes at a time because of the pain.   (Tr. at 22).   The ALJ further reviewed the medical evidence, which showed that Ms. Fife was severely injured on May 1, 2011, when she was in an automobile accident and sustained multiple bone fractures.   She underwent two surgeries in May of 2011, including one that inserted surgical hardware into her pelvis.   After those surgical incisions healed, she began to walk again, and was weight-bearing by August or September of 2011.   On September 26, 2011, another surgery was undertaken to remove the hardware in her pelvis, and Ms. Fife was told to continue bearing weight and to continue with physical therapy.   (Tr. at 298-99).   On October 26, 2011, her orthopedist, Dr. Rena Stewart, recorded that Ms. Fife had applied for disability.   She noted that Ms. Fife's incisions were very well healed, that the X-rays indicated good results, and that her pelvis was "stable."   She further noted that Ms. Fife was making "slow progress," and that she was not doing "any kind of exercises," which resulted in "quite poor

6

muscular strength." (Tr. at 285). Dr. Stewart opined that Ms. Fife's injuries would preclude "heavy labor." (Tr. at 23, 285). Dr. Stewart also prescribed physical therapy twice a week for 8 weeks, with the indication that Ms. Fife should "wean" off the cane, and that she also should complete one hour of home exercise per day. (Tr. at 267).

On January 19, 2012, Dr. Stewart noted that Ms. Fife continued to go to her physical therapy appointments, but that she did "absolutely nothing" at home. (Tr. at 283). The doctor recommended that she do two hours of home exercise per day, and that she "try to strengthen herself in a manner that might get her back into the work place." (*Id.*) Records of her physical therapy indicate that, after the appointment with Dr. Stewart, Ms. Fife continued to work with the therapist through March 2012, although she was a "no show" on three occasions in those two months. (Tr. at 269-271). Her physical therapist reported on January 20, 2012, that Ms. Fife was "ambulating most of the time without her cane," and that she was working on going up and down stairs, but that she needed to "walk at home everyday for up to two hours." (Tr. at 272.) The physical therapist in November of 2011 noted that Ms. Fife was "very apprehensive about going up and down steps" and was

"apprehensive about walking without her quad cane."  (Tr. at 275).  The therapist

noted, however, that this was "just physiological[2] just very over protective."  (*Id.*)

In July of 2012, Ms. Fife began to be treated at Quality of Life.  She reported

that she could not walk without pain after she ran out of Robaxin, a muscle relaxant.

She reported that her pain level was 6 on a scale of 1-10.  She received prescriptions

for Robaxin and Tramadol.  (Tr. at 413-15).  Three months later, she reported that

the medicines helped, but that she did not know if she could afford them.  She

reported her pain as a level 5.  Her prescription for Robaxin was changed to Flexeril

because it was less expensive.  (Tr. at 416-18).  At her next visit, she rated her pain

as a 3.  (Tr. at 422).  In March of 2013, she reported that her hip pain was

"worsening;" the examination showed tenderness in the hip and pelvis, but no joint

deformity, heat, or swelling.   The doctor did not increase or change her

medications.  (Tr. at 427-28).

Ms. Fife also received counseling and mental health treatment for depression.

Her records from CED Mental Health Center show that she was diagnosed with

major depression, recurrent without psychotic features, and that her depression was

linked to family conflict and financial problems.  (Tr. at 440-57).  The ALJ noted

---

[2]   In the context of the sentence and in the broader context of the therapy records, it appears that the use of this word was, at best, imprecise, and that the therapist was suggesting that the apprehension was "psychological."

that Ms. Fife was prescribed Fluoxetine for her depression, but six months later reported she had not taken the medication for two months because she could not afford it, even though she continued to smoke ten cigarettes a day. The therapist noted that the medication was available for $4. (Tr. at 442). During her treatment at CED, Ms. Fife was twice given a Global Assessment of Functioning Score ("GAF"): once she was assessed at 51, and once at 50. (*Id.*)

The ALJ considered the GAF scores, (tr. at 24 n.2, 28), and evaluated all of the medical evidence before finding that Ms. Fife's assertions regarding her pain and her impairments were not entirely credible. The ALJ noted that despite Ms. Fife's assertions that her pain level usually exceeded 8 or 9, the pain reports to doctors showed fluctuations from 3 to 6; she further noted that despite assertions that her pain level was at least an 8 or 9 at the hearing, she did not appear to be in any distress. (Tr. at 25). The ALJ pointed out that the medical records showed that Ms. Fife was noncompliant with her doctor's recommendations that she exercise and walk for two hours a day, and that she did not always take her medication. (Tr. at 25-28.) She further noted that the medical records mentioned a cane only to the extent that the physical therapist thought Ms. Fife was "overly protective." (Tr. at 25). In short, the ALJ found that Ms. Fife's pain and limitations were "overstated based upon diagnostic findings and treatment records." (*Id.*)

9

Moving on to the fourth step of the analysis, the ALJ concluded that Ms. Fife was unable to perform any of her past relevant work.   (Tr. at 29).   She further determined that the claimant was a "younger individual" at the time of her alleged onset of disability.   The ALJ considered the testimony of a vocational expert, and determined that Ms. Fife was able to perform work as a general office clerk, information clerk/interview clerk/order clerk, and production sorter/inspector.   (Tr. at 30).   The ALJ concluded her findings by stating that Ms. Fife is not disabled as defined in the Social Security Act, Sections 216(i) and 223(d).   (Tr. at 30).

## II.   Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one.   The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.   *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).   Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004), quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997). The Court approaches the factual findings of the Commissioner with deference, but

applies close scrutiny to the legal conclusions.   *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.   *Id.*   "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"   *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)).   Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400.   No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).   Moreover, failure to apply the correct legal standards is grounds for reversal.   *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Ms. Fife asserts that the ALJ's decision should be reversed and remanded because the ALJ's decision failed to properly pose a hypothetical to the vocational

expert that included the claimant's need to use a cane for ambulation.   (Doc. 14, pp. 12-13).   Ms. Fife further asserts that the ALJ's finding that her pain was not disabling was not supported by substantial evidence.   (Doc. 14, pp. 13-15).   The court, having scrutinized the record in its entirety, finds that these arguments are without foundation.

A.   *Use of a Cane*

First, counsel asserts that the ALJ's decision is unsupported because the ALJ's hypothetical question to the vocational-expert witness did not contain a finding "that the claimant does not need a cane."   She argues that absent this additional information, the hypothetical question failed to elicit an authoritative answer concerning jobs for which she is able.   This stands the burden of proof on its head. It clearly was the responsibility of Ms. Fife to provide objective medical evidence to support her assertion that she could not ambulate without a cane.   The ALJ considered the notations in the medical record about the claimant's reliance on a cane and her trepidation at giving up her cane, and concluded that the cane is not a medical necessity.   The fact that a patient wishes to use a cane or wheelchair is not the equivalent of having a medical source prescribe an assistive device, or even advise a patient of the need for such a device.   It is clear from the medical records as a whole that the doctor and physical therapist assessed Ms. Fife's condition as

ambulatory without the need for a cane, and, indeed, they reported that she was ambulatory without a cane on many occasions.   Because the use of a case was not medically necessary, the ALJ's failure to include it in his hypothetical question to the VE did not make the question or answer invalid.

Under 42 U.S.C. § 423(d)(5)(A), a claimant for disability benefits bears the initial burden of proving that he or she is disabled within the meaning of the Social Security Act. The court must be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d).   The ALJ's determination that use of a cane was not an appropriate limitation in determining Ms. Fife's RFC is an opinion reserved to the Commissioner, and is based on substantial evidence, including the notations in the record regarding the plaintiff's ability to walk.   The Eleventh Circuit Court of Appeals reached a similar conclusion in *Wilson v. Commissioner*, 500 Fed. Appx. 857, 859 (11th Cir. 2012), affirming an adverse decision where the ALJ concluded that the claimant was not credible because he "testified that he always used a cane to walk, even though the medical evidence

13

showed that a cane was not medically necessary."   The appellate court also has noted that "[e]ven an individual using a medically required hand-held assistive device can perform sedentary work, depending on the facts and circumstances of the case." *Baker v. Commissioner*, 384 Fed. Appx. 893, 895 (11th Cir. 2010).   The inclusion of the limitations of walking with a cane in a hypothetical is necessary only where the ALJ has determined that a cane is "medically required" and significantly limits the claimant's ability to perform "all the basic exertional and non-exertional sedentary tasks." 384 Fed. Appx. at 896.

In this case, the medical evidence did not support a finding that the use of the cane for ambulation was medically necessary.   Furthermore, there was no evidence of any kind to demonstrate that the use of the cane prevented the claimant from performing the tasks of sedentary work.   Accordingly, the ALJ's failure to include the cane in a hypothetical question to the vocational expert did not constitute error.[3]

B.   *Assessment of Pain*

Plaintiff next asserts that the ALJ erred in failing to properly consider the effect of her pain on her ability to work.   (Doc. 14, p. 13).   Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if

---

[3]   Although it is clear that Ms. Fife did use a cane, there is no indication in the records that any doctor recommended the use of the cane after 2011.

it is supported by medical evidence.   *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).   To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if she articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements.").

In this case, the ALJ specifically stated that plaintiff suffered severe impairments that could give rise to pain.   However, the ALJ carefully considered the evidence that supported Ms. Fife's allegations of pain and gave a detailed and

well-reasoned explanation for her determination that the pain was not disabling. The ALJ agreed that the broken bones and surgeries provided evidence of a medical condition that could give rise to pain, but did not find that the extent of the resulting pain was as great as Ms. Fife's subjective testimony indicated.    Although the plaintiff argues that Ms. Fife's "very limited daily activities" do not undermine medical evidence of pain, the ALJ properly considered not only the claimant's testimony at the hearing, but also her own reports, made in applying for disability benefits, that she attended Bible study daily, attended church services for several hours on Sundays, and was able to vacuum and perform other household chores. The reasons that the ALJ did not find Ms. Fife's pain to be disabling have been discussed *supra*, including findings from the medical record where she reported much less pain than claimed and that she was non-complaint with taking medication and performing physical-therapy exercises that would reduce her pain.    The ALJ's decision regarding claimant's pain was supported by substantial evidence and was both comprehensive and consistent with the applicable SSA rulings.   The objective medical and other evidence provides substantial evidence to support the ALJ's conclusion that plaintiff's pain did not cause disabling limitations.

**IV.    Conclusion**

Upon review of the administrative record, and considering all of Ms. Fife's arguments, the Commissioner's decision is due to be AFFIRMED.   The court will enter a separate judgment.

DATED the 15th day of December, 2016.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE